IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FENYANG STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-cv-1525 (LMB/IDD) |
| | ) | |
| GINA M. RAIMONDO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Before the Court is a Motion to Dismiss the Amended Complaint, [Dkt. No. 16] ("Motion

to Dismiss"), filed by defendants Gina M. Raimondo, in her official capacity as Secretary of the

United States Department of Commerce ("Secretary Raimondo"), and Robert Fennema, a

supervisory patent examiner at the United States Patent and Trademark Office, in his individual

capacity ("Fennema"), (collectively, "defendants"), asking the Court to dismiss pro se plaintiff

Fenyang Stewart's ("plaintiff" or "Stewart") ten-count Amended Complaint for failure to state a

claim upon which relief can be granted.  The Motion to Dismiss is fully briefed and oral

argument would not assist the decisional process.  For the reasons explained in this

Memorandum Opinion, defendants' Motion to Dismiss, [Dkt. No. 16], will be granted.

I.

This civil action was originally filed in the United States District Court for the District of

Columbia, Case No. 1:23-cv-149, and assigned to Senior United States District Judge Reggie B.

Walton.  See [Dkt. No. 1].  In that proceeding, defendants filed a Motion to Dismiss the

Amended Complaint, or in the alternative a Motion to Transfer Venue to the Eastern District of

Virginia. [Dkt. No. 16]. After hearing oral argument, Judge Walton granted defendants' motion

in part and transferred the action to this district. [Dkt. No. 21].

The Amended Complaint alleges that, in 2016, Stewart was fired from his patent

examiner position at the United States Patent and Trademark Office (the "USPTO") after

repeated incidents of unprofessional conduct, including a display of aggressive behavior toward

a USPTO employee. See [Dkt. No. 11] at ¶¶ 10-11. Stewart appealed his termination to the

Merit Systems Protection Board (the "MSPB"), which upheld the termination. See Stewart v.

Ross, Civil Action No. 18-1369 (E.D. Va. Aug. 29, 2018), [Dkt. No. 51-1] ("MSPB Decision").[1]

He then filed a civil action in this Court seeking review of the MSPB Decision, alleging that his

termination was discriminatory or retaliatory because of the USPTO's "failure to accommodate,

retaliation, hostile work environment, and disability discrimination under the Rehabilitation Act

and the Civil Rights Act." See Stewart v. Ross, Civil Action No. 18-1369, 2020 WL 1907471, at

*7 (E.D. Va. Apr. 17, 2020) (Stewart I). This Court found that the MSPB did not commit

"reversible error in affirming defendants' decision to terminate [Stewart's] employment with the

USPTO." Id. at *21. Plaintiff appealed that decision to the United States Court of Appeals for

the Fourth Circuit, which summarily affirmed in an unpublished opinion. Stewart I, 833 Fed.

App'x 995 (4th Cir. 2021) (per curiam) ("We affirm for the reasons stated by the district court.").

---

[1] Stewart was terminated for "improper conduct for 14 specifications falling under the categories of failure to follow supervisory instructions, and violations of the [USPTO's] workplace violence policy." Stewart I, Civil Action No. 18-1369, [Dkt. No. 51-1] ("MSPB Decision"). On March 7, 2016, Stewart was found to have "engaged in disruptive behavior during a meeting with [his] supervisor when [he] stated that the security officer was there to protect [Stewart] and suggested through [his] words and body language that [he was] having a difficult time controlling [himself]." Id. On March 15, 2016, Stewart "engaged in inappropriate behavior when [he] angrily responded to [his] supervisor, began shaking, and then shut [his] supervisor's door and left after [he] arrived for a meeting with [his] supervisor while he was finishing a phone call." Id. The MSPB Decision includes a dozen more bases for the USPTO's termination decision.

The United States Supreme Court denied Stewart's petition for a writ of certiorari. 142 S. Ct. 110 (2021).

Five years after being fired, Stewart applied for his old job at the USPTO, [Dkt. No. 11] at ¶¶ 3, 92-93, requesting "consideration under the Schedule A hiring authority for individuals with disabilities," id. at ¶ 93. He was interviewed on March 11, 2021, but was not rehired. Id. at ¶ 5. Stewart alleges that he was the "most qualified applicant for the position" because of his "prior experience as a Fully Successful GS-9 Patent Examiner," id. at ¶ 101, and that the failure to rehire him was the result of impermissible collateral consequences of his previous termination, including a hiring process that allowed for his firing to be considered when assessing whether to offer him a new position at the USPTO.

> [The Department of] Commerce's omissions, via its lack of oversight of the following policies, including but not limited to: USPTO's Workplace Violence policy; USPTO's Banned and Barred policy; its paid administrative leave policy; its hiring policies; its Rehire Analysis policy; its reinstatement policy as it pertains to prior Federal employees with permanent career status; its Schedule A policies as it pertains to hiring of qualified applicants with targeted disabilities, including review of said policies to bring said policies into compliance with that of the Department of Commerce was the direct and proximate cause of [ ] Stewart's non-selection for the position in question.

Id. at ¶ 16; see also id. at ¶¶ 18-20, 23 (asserting challenges to the initial determination to terminate Stewart's employment).

The Amended Complaint also alleges that defendant Fennema, a supervisory patent examiner at the USPTO, provided discriminatory or improper comments during a USPTO Rehire Analysis which caused the USPTO not to rehire Stewart and constituted "hearsay evidence and not his own eyewitness testimony." Id. at ¶ 108. When Fennema was asked the following questions on the Rehire Analysis form, he was recorded as having orally responded as follows:

4.) Was this employee involved in any misconduct which did not result in a formal disciplinary action? If so, please describe.

[Fennema]: FE[NYANG STEWART] was placed on the USPTO bar and bar [sic] list and admin leave, after he brought a security officer to a SPE's Office, since FE[NYANG STEWART] was feeling concerned FE[NYANG STEWART] would harm the SPE.

5.) Did this employee experience any performance problems that did not result in a rating below Fully Successful, or oral/written warning? If so, please describe.

[Fennema]: Yes. He took massive leave and admin leave in the last 8-9 months before his removal.

6.) Are there any other relevant reasons for or against re-hiring this employee? If so, please describe.

[Fennema]: Will not work in [the] same complex as FE[NYANG STEWART]. Fearful for self and everyone's safety due to FE[NYANG STEWART'S] disruptive behavior.

Id. at ¶ 50; see also id. at ¶ 51 (recounting an event where Stewart brought a security officer to another colleague's office and stated "I brought them for your protection" to the colleague).

Stewart contends that the collateral consequences of his firing and Fennema's comments are the basis of the USPTO's decision not to rehire him, and serve as the foundation for his ten-count Amended Complaint alleging discriminatory and unconstitutional behavior by Secretary Raimondo, in her official capacity, the United States Department of Commerce, and Fennema, in his individual capacity. In his Amended Complaint, Stewart pleads the following counts[2] for relief:

- Count I: "Non-Selection on the basis of Disability – Violation of the Rehabilitation Act"

---

[2] Plaintiff improperly numbered the ten counts in his Amended Complaint; therefore, the Court has renumbered them based on the order in which they are alleged.

- Count II: "Racial Stereotyping and Racial Defamation Thirteenth Amendment Bivens Claim Against Robert Fennema in his Individual Capacity"

- Counts III and IV: "Non-Selection on the Basis of Disability and Retaliation, Rehabilitation Act against Gina M. Raimondo in her official capacity ('Commerce')"

- Count V: "Non-Selection on the Basis of Race (Black), Disparate Treatment Title VII"

- Count VI: "Non-Selection on the Basis of Retaliation for Prior EEO activity, opposing discrimination, requesting reasonable accommodations, Stewart v. Lee Title VII"[3]

- Counts VII and VIII: "42 U.S.C. Section 1982, Discrimination and Interference with Continued Property Right of Federal Employee with Career Tenure via reinstatement and Violation of the Fifth Amendment Due Process [sic] and continued Property Right of Employment via Reinstatement and Protection of Stewart's Reputation – Against Fennema and the Department of Commerce"

- Count IX: "Violation of the Thirteenth Amendment – Against Fennema in his individual capacity"[4]

- Count X: "Retaliatory Harassment on the basis of race, prior EEO activity, and disability"[5]

See generally [Dkt. No. 11].

---

[3] Improperly labeled as a duplicate of Count V in the Amended Complaint. [Dkt. No. 11] at 67.

[4] Improperly labeled as a duplicate of Count VIII in the Amended Complaint. [Dkt. No. 11] at 70.

[5] Improperly labeled as a duplicate of Count IX in the Amended Complaint. [Dkt. No. 11] at 72.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a claim if the "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a court must accept all well-pleaded allegations as true and view the complaint in the light most favorable to the plaintiff, it need not accept "unwarranted inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 n.26 (4th Cir. 2009)).

On a motion to dismiss, a court can consider documents expressly referenced and relied upon in the complaint without transforming that motion into one for summary judgment. Gasner v. Cnty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment. This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims.").[6]

---

[6] The Amended Complaint incorporates the July 7, 2017 MSPB Decision, Stewart I, Civil Action No. 18-1369 (E.D. Va. Aug. 29, 2918), [Dkt. No. 51-1], by reference because the Amended Complaint selectively quotes from it. See, e.g., [Dkt. No. 11] at ¶¶ 61, 115. Moreover, the Court may take judicial notice of the decision of an undisputed official government document.

In Counts I, III, and IV of the Amended Complaint, Stewart alleges that the defendants violated Stewart's rights under the Rehabilitation Act by failing to rehire him under Schedule A, [Dkt. No. 11] at ¶¶ 190-195, and by failing to rehire him and allow him to perform telework because he was on the "Banned & Bar list," id. at ¶¶ 195-202.  More specifically, Stewart contends that by "forc[ing him] to compete" with other applicants who did not have disabilities for the position of patent examiner, he was denied "any special consideration as required under the Schedule A hiring authority."  Id. at ¶¶ 97, 193; see also id. at ¶¶ 16, 93-94, 190-95. Defendants respond that Stewart fundamentally misreads Schedule A, "which allows—but does not require—preference to individuals with disabilities when hiring," [Dkt. No. 20] at 4, and that Stewart never requested telework, nor was telework an accommodation for his disability, id.

Defendants are correct.  Stewart was not entitled to automatic "special consideration" under Schedule A because the regulatory language "is permissive; it does not require agencies to hire a disabled applicant through non-competitive process."  Hylton v. Calabria, 2020 WL 6134673, at *8 (D.D.C. Oct. 19, 2020); MacDonald v. Cohen, 233 F.3d 648, 653 (1st Cir. 2000) ("Schedule A provides the agency a means to avoid competitive placement [to hire a disabled person] but does not impose an obligation to use this authority in any specific case."); see also 5 C.F.R. § 213.3102(u)(1).  In response, Stewart relies on a publication from the United States Equal Employment Opportunity Commission titled "The ABCs of Schedule A"; however, that "publication does not bind agencies or create any legal rights; rather, it provides advice regarding how an agency should implement a discretionary authority to engage in non-competitive hiring." Hylton, 2020 WL 6134673, at *8.  At bottom, the USPTO's decision not to use a non-competitive process did not violate the Rehabilitation Act.

7

The Amended Complaint also alleges that the USPTO should have granted Stewart "a reasonable accommodation of remote work or full-time telework" because "that could reduce or eliminate any alleged threat that [Stewart] opposed [sic] to others," [Dkt. No. 11] at ¶¶ 195-96, and that the use of the "Banned & Barred list" constituted "discrimination on the basis of disability," id. at ¶ 197.  Stewart has provided no support for his argument that the USPTO is required to rehire an employee who was lawfully terminated or must do so by providing an accommodation to that former employee to minimize the safety risk to other employees. Moreover, Stewart has failed to allege plausible facts that support the inference that his placement on the "Banned & Barred list" was based on his disability,[7] as opposed to the USPTO's determination that he engaged in workplace misconduct during his previous period of employment.  As this Court held in Stewart I, and as the MSPB found in its decision, Stewart was not fired for an improper or discriminatory reason; rather, he was fired for conduct "in violation of the agency's workplace violence policy."  MSPB Decision at 15.  Additionally, Stewart does not allege that telework would have accommodated his disability; instead, he alleges telework would have accommodated his "threat or risk of harm."  [Dkt. No. 18] at 5; [Dkt. No. 11] at ¶ 196.  Accordingly, the Amended Complaint fails to allege sufficient plausible facts to support a claim that defendants refused to provide Stewart with a reasonable accommodation for his disability or discriminated against him based on his disability.[8]  For these reasons, plaintiff has failed to state a claim under the Rehabilitation Act.

---

[7] In the Amended Complaint, Stewart alleges that he suffers from PTSD, making him prone to panic attacks and perceived violence, as well as severe back pain.  [Dkt. No. 11] at ¶¶ 53, 56, 90, 110, 116.  Defendants do not contest the existence of plaintiff's stated disability.

[8] To state a claim under the Rehabilitation Act, the plaintiff must establish that 1) he has a disability, 2) he is otherwise qualified for the position, and 3) his disability was a motivating factor in the employer's decision not to hire him.  Taylor v. Hampton Roads Regional Jail Authority, 550 F. Supp. 2d 614 (E.D. Va. 2008).

In Counts II and IX of the Amended Complaint, Stewart attempts to fashion a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Fennema based on his statements in the Rehire Analysis form that Stewart alleges violated his Due Process and Thirteenth Amendment rights. See [Dkt. No. 11] at ¶¶ 158-77. As alleged in the Amended Complaint, Stewart is seeking the creation of "a new Bivens remedy for racial defamation by Federal employees that result in a withholding of the property right of continued Federal employment by former federal employees and/or which violates the Thirteenth amendment [sic]." Id.; see also id. at ¶¶ 205-26, 260.

To recognize a new Bivens cause of action, a plaintiff's case must be "meaningful[ly] different from the three cases in which the Supreme Court has implied a damages action," and a court must assess whether there are any special factors that indicate that the Judiciary is less equipped than Congress to create a non-statutory cause of action for money damages. Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022); Hernandez v. Mesa, 140 S. Ct. 735, 750 (2020) ("[T]he most important question is who should decide whether to provide for a damages remedy, Congress or the courts?"). Defendants argue that the allegations in the Amended Complaint asserting a new cause of action for "racial defamation by Federal employees" in violation of the Due Process Clause or the Thirteenth Amendment are meaningfully different from the Supreme Court's Bivens case law, and special factors counsel against the creation of a new cause of action. Defendants are correct.

Over the past fifty years, the Supreme Court has recognized Bivens actions for only three claims: 1) unconstitutional searches and seizures, recognized in Bivens itself; 2) claims of gender discrimination against a member of Congress in violation of the equal protection component of the Fifth Amendment, recognized in Davis v. Passman, 422 U.S. 228 (1979); and 3) a deliberate

9

indifference claim under the Eighth Amendment against prison officials, recognized in <u>Carlson v. Green</u>, 446 U.S. 14 (1980).  <u>See Ziglar v. Abbasi</u>, 582 U.S. 120, 130-31 (2017).[9]  A case that is "different in a meaningful way from previous <u>Bivens</u> cases" presents a "new context."  <u>Id.</u> at 139.  In <u>Abbasi</u>, the Supreme Court provided a non-exclusive set of examples of differences that courts should consider when determining whether a <u>Bivens</u> action is appropriate:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Id.</u> at 139-40.  Such "meaningful" differences may be "small, at least in practical terms," but still constitute an extension of <u>Bivens</u>.  <u>Id.</u> at 147; <u>see also</u> <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 743 (2020) (deploying a "broad" understanding of "new context").

Stewart's proposed <u>Bivens</u> claim is meaningfully different from the Supreme Court's recognized <u>Bivens</u> causes of action and is thus a new context.  Neither <u>Bivens</u>, <u>Passman</u>, nor <u>Green</u> involved claims arising out of the Thirteenth Amendment, defamation, or the hiring of, retention of, or commission of torts by federal patent examiners.[10]  For this reason alone, plaintiff's <u>Bivens</u> claim fails.  Even if any of his claims fell within the heartland of <u>Bivens</u>, special factors counsel against granting an extension of <u>Bivens</u> because plaintiff has available to him other forms of relief through his Title VII and Rehabilitation Act claims.  When alternative

---

[9] The <u>Bivens</u> "new context" analysis is limited to these three cases and does not consider decisions of federal courts of appeals or district courts recognizing such a remedy.  <u>Abbasi</u>, 582 U.S. at 139.

[10] In his Opposition, Stewart asserts that the "right of action" predated <u>Bivens</u>, [Dkt. No. 18] at 16; however, he does not provide any support for that argument.

methods of relief are available, "a <u>Bivens</u> remedy usually is not." <u>Abbasi</u>, 582 U.S. at 145

(cleaned up); <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001). It is irrelevant to the

special factors inquiry whether such processes provide "adequate" or meritorious relief to a

particular plaintiff. <u>United States v. Stanley</u>, 483 U.S. 669, 683 (1987). Instead, a court must

merely ensure that there is "some procedure" in place for the aggrieved "to defend and make

good on his position." <u>Wilkie v. Robbins</u>, 551 U.S. 537, 552 (2007). If an "avenue for some

redress" exists, "bedrock principles of separation of powers foreclose[] judicial imposition of a

new substantive liability." <u>Corr. Servs. Corp.</u>, 534 U.S. at 69. For these reasons, the Amended

Complaint fails to state a claim under <u>Bivens</u>.[11]

Stewart's claim directly under the Thirteenth Amendment fares no better, because there is

no private right of action under the Thirteenth Amendment, neither is there one specifically for

"racial defamation" by a federal employee. <u>See</u> <u>Washington v. Finlay</u>, 664 F.2d 913, 927 (4th

Cir. 1981) ("While Congress may arguably have some discretion in determining what kind of

protective legislation to enact pursuant to the [T]hirteenth [A]mendment, it appears that the

amendment's independent scope is limited to the eradication of the incidents or badges of slavery

and does not reach other acts of discrimination." (citing <u>Civil Rights Cases</u>, 109 U.S. 3, 23-25

(1883))); <u>see also</u> <u>Westray v. Porthole, Inc.</u>, 586 F. Supp. 834, 838-39 (D. Md. 1984) ("[T]he

Thirteenth Amendment does not give rise to an independent cause of action."); <u>Lagayan v. Odeh</u>,

199 F. Supp. 3d 21, 29 (D.D.C. 2016) ("[T]here is 'no private right of action under the

Thirteenth Amendment.'" (quotation omitted)).

---

[11] Because the Court declines to extend <u>Bivens</u>, it expressly declines to decide whether Fennema would be entitled to qualified immunity. <u>Cf.</u> [Dkt. No. 16] at 19-21.

In Counts VII and VIII of the Amended Complaint, Stewart alleges that Fennema's remarks in the Rehire Analysis form violated the Due Process Clause of the Fifth Amendment "by interfering with [plaintiff's] property right without a fair and impartial hearing . . . [to] respond to [Fennema's remarks]." [Dkt. No. 11] at ¶¶ 268-72.  More specifically, the Amended Complaint contends that Fennema "intentionally and maliciously interfered with [plaintiff's] property right by falsely portraying him as violent and dangerous, based on racially-coded language and stereotypes of Black males as brutes and beasts." Id. at ¶ 270.  Defendants' central response is that Stewart has failed to identify a deprivation of "real and personal property" and that any decision whether to reinstate him was discretionary. [Dkt. No. 16] at 22-23.  Again, defendants have the better argument.

To survive a motion to dismiss a procedural due process claim, a plaintiff must allege that he was deprived of a constitutionally protected liberty or property interest by a state actor using inadequate procedure. Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012).  Here, Stewart claims his property right is the "right of continued Federal employment," which he possessed because he "was a career employee . . . prior to his application" to be rehired by the USPTO. [Dkt. No. 11] at ¶¶ 269, 274.  Stewart also contends that he was entitled to reinstatement under 5 C.F.R. § 315.401 because the Department of Commerce failed to comply with its reinstatement policy and the "right of Federal employment inherent in the regulations related to career reinstatement." [Dkt. No. 11] at ¶¶ 16-17, 88, 95-96, 275-278.  These arguments fail for three reinforcing reasons.  First, at the time of his application, Stewart was not employed by the USPTO and had no purported right to "continued Federal employment" as a former employee.  Any such right that Stewart believes he had would have ceased when he was terminated for cause by the agency—a termination that was upheld by the MSPB, this Court, and

12

the Fourth Circuit in Stewart I.  Second, Stewart has provided no binding or persuasive precedent

demonstrating that a former federal employee has a constitutionally protected right to be rehired

by his former federal employer.  Third, the text of 5 C.F.R. § 315.401 does not automatically

grant Stewart a "claim of entitlement" to reinstatement at the USPTO.  That regulation merely

provides that "an agency may appoint by reinstatement . . . a person who previously was

employed."  See 5 C.F.R. § 315.401(a).  Under this provision, reinstatement "is discretionary,

even for qualified candidates having 'career' tenure status."  See Kent v. Merit Sys. Prot. Bd.,

824 Fed. App'x 1025, 1027 (Fed. Cir. 2020).  Because "reinstatement is a matter of discretion,"

id. at 1028, Stewart does not have a claim of entitlement to his former position and does not have

a constitutionally protected property right in continued federal employment to support a claim

under the Fifth Amendment.

Stewart has styled a similar claim under 42 U.S.C. § 1982, alleging that defendants

violated his rights because the decision not to rehire him constituted racial discrimination that

deprived him of his "property right to continue his employment."  [Dkt. No. 11] at ¶¶ 268-270,

276, 279.  His § 1982 claim fails because he lacks a constitutionally protected property right in

continued federal employment and, as explained above, Title VII is the exclusive remedy for

allegations of public-sector employment discrimination.  See Bullock v. Napolitano, 666 F.3d

281, 283 (4th Cir. 2012) ("Title VII creates the 'exclusive, pre-emptive administrative and

judicial scheme for the redress of federal employment discrimination.'" (quoting Brown v. Gen.

Servs. Admin, 425 U.S. 820, 829 (1976))).

In Counts V and VI of the Amended Complaint, Stewart also alleges that he was not

rehired because of racial discrimination and in retaliation for his 2015 EEO complaint in

violation of Title VII.  As to alleged racial discrimination by the USPTO and defendants, the

Amended Complaint posits four theories: 1) there was a disparate impact among Black patent examiner applicants who were "arbitrarily stereotyp[ed] . . . as having committed an episode of workplace violence," [Dkt. No. 11] at ¶ 246; 2) an allegation that a USPTO supervisor fabricated an event before Stewart was fired, id. at ¶ 248; 3) the USPTO "failed to perform a Metz Analysis,"[12] id. at ¶¶ 249-52; and 4) allegations that "White and Non-Black" USPTO employees who were violent "were not subsequently placed on the Banned and Barred list, [and] not subjected to the discriminatory Rehire Analysis policy," id. at ¶ 255. At bottom, these claims amount to an attempt to relitigate plaintiff's initial termination that was upheld in Stewart I.

As explained in Stewart I, plaintiff was not racially stereotyped—he was found to have violated the agency's workplace violence policy. See supra note 1 (citing examples). His allegation that non-Black USPTO employees who were similarly violent but not terminated fails to state a claim because he has not identified any valid comparators. See [Dkt. No. 11] at ¶¶ 143-44; Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator."); Tex. Dep't of Cmty. Affs. V. Burdine, 450 U.S. 248, 258 (1981) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973))). For example, the Amended Complaint does not allege that the USPTO faced the decision whether to rehire or reinstate other similarly situated employees who had been placed on the "Banned & Barred list," which is the decision plaintiff challenges here.

---

[12] Metz v. Dept' of Treasury, 780 F.2d 1001 (Fed. Cir. 1986), applies to a federal employee's challenge of a decision by the MSPB in which the agency evaluates a verbal threat by a federal employee; however, as defendants rightly articulate, Stewart may not collaterally attack the MSPB's decision that was affirmed in Stewart I, nor may he seek a judicial remedy premised on a theory that was available to him in the prior action but was unsuccessful. Stewart raised this argument before the MSPB, and it was dismissed. Stewart I, 2020 WL 1907471, at *19 n.24.

The retaliation claim is premised on the allegation that Fennema was one of the people "named as [a] Responsible Management Official[] in the prior underlying EEO complaints" filed by Stewart in 2015 and that Fennema "raised outdated allegations of workplace violence" six years later, which resulted in Stewart not being rehired.  [Dkt. No. 11] at ¶¶ 260-64.  Given the absence of direct evidence of retaliation, a retaliation claim can only survive if there was temporal proximity between the protected activity and the alleged retaliation.  Roberts v. Glenn Industrial Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021) (explaining that "the adverse act" must bear "sufficient temporal proximity to the protected activity").  As alleged in the Amended Complaint, there were approximately six years between the protected activity and Fennema's statements in the Rehire Analysis form.  [Dkt. No. 11] at ¶¶ 46, 50, 92.  Moreover, Stewart's discrimination claim had been dismissed and that decision had been affirmed before Fennema made his statements and before Stewart's application for his former position was denied.  Compare [Dkt. No. 11] at ¶¶ 92-95, with Stewart I, 933 Fed. App'x at 995.  The "lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (holding that three years was enough time to destroy temporal proximity in a retaliation claim).

The retaliation claim also fails because the Amended Complaint has not alleged plausible facts indicating that Fennema's purported desire to retaliate was the but-for cause of the decision not to rehire Stewart.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); Foster v. Univ. of Maryland—Eastern Shore, 787 F.3d 243,

248-49 (4th Cir. 2015) (adopting the <u>McDonnell Douglas</u> framework for evaluating Title VII retaliation claims, which incorporates a "but-for causation analysis").  As defendants correctly observe, the USPTO knew it terminated Stewart for cause and "any retaliatory motive would be subsumed by the fact that the [USPTO] would not [rehire] someone it had fired for workplace violence violations." [Dkt. No. 16] at 27.  Accordingly, the Amended Complaint's allegations of racial discrimination and retaliation fail to state a claim under Title VII.

The final claim in the Amended Complaint, Count X, is an amorphous retaliatory harassment allegation against both the Department of Commerce and Fennema—claiming that their "false and discriminatory accusations were a continuation of the lies and discriminatory treatment that initially caused [Stewart] to be removed from the [USPTO]." [Dkt. No. 11] at 72.  This claim, which essentially is another improper attempt to relitigate <u>Stewart I</u>, fails for multiple reasons.  First, to the extent it attempts to reopen the basis for Stewart's initial termination, that issue has been fully resolved.  Second, to succeed on a Title VII harassment claim, there is a presumption of present employment as a plaintiff must show that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  Stewart is not currently employed by the USPTO. Finally, the Title VII and Rehabilitation Act claims against Fennema, in his individual capacity, fail because claims of violations of Title VII and the Rehabilitation Act cannot be brought against individual supervisors. <u>Lissau v. Southern Food Serv., Inc.</u> 159 F.3d 177, 180-81 (4th Cir. 1998) ("Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'"); <u>Jones v. Sternheimer</u>, 387 Fed. App'x 366, 368 (4th Cir. 2010) (same).

III.

For these reasons, defendants' Motion to Dismiss the Amended Complaint, [Dkt. No.

16], will be granted by an Order to be issued with this Memorandum Opinion.

Entered this ⎯12th⎯ day of January, 2024.

Alexandria, Virginia

/s/ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Leonie M. Brinkema
United States District Judge

17